UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SWIFTLIFE, INC., a New York Corporation, | Civil Action No. _____ |
| Plaintiff, | PLAINTIFF'S ORIGINAL COMPLAINT FOR: |
| vs. | 1. TRADEMARK INFRINGEMENT IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1114(1); |
| TAYLOR SWIFT; TAYLOR SWIFT PRODUCTIONS, INC.; TAS RIGHTS MANAGEMENT, LLC; GLU GAMES, INC.; GLU MOBILE, INC. | 2. FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a); |
| Defendants. | 3. DECEPTIVE ACTS AND PRACTICES UNLAWFUL UNDER NEW YORK GENERAL BUSINESS LAW § 349; |
| | 4. FALSE ADVERTISING UNDER NEW YORK GENERAL BUSINESS LAW § 350; |
| | 5. USE OF NAME OR ADDRESS WITH INTENT TO DECEIVE UNDER NEW YORK GENERAL BUSINESS LAW § 133; |
| | 6. TRADEMARK INFRINGEMENT UNDER NEW YORK COMMON LAW; |
| | 7. UNFAIR COMPETITION UNDER NEW YORK COMMON LAW; |
| | 8. UNJUST ENRICHMENT UNDER NEW YORK COMMON LAW; |
| | <u>INJUNCTIVE RELIEF REQUESTED</u> |
| | <u>JURY TRIAL DEMANDED</u> |

COMES NOW, Plaintiff SWIFTLIFE, INC. ("SwiftLife" or "Plaintiff"), by and through its attorneys, Andrew Cooper and Kenneth S. Kast of Mohen Cooper LLC, and Ramon de Jesus Rodriguez and Christopher S. Murphy of Murphy Rodriguez, PLLC,[1] and respectfully alleges as follows:

## INTRODUCTION

1.      SwiftLife is a small, individually owned business located in Wantagh, Long Island, New York, that provides computer consulting services in the field of design, selection, implementation and use of computer hardware and software systems for others, as well as website design, repair of computer software and repair of damaged computer programs. With the exception of a part-time administrative assistant, Patrick Lloyd Yves Bénot is the sole owner and employee of SwiftLife. Patrick is a resident of the State of New York, having lived his entire life on Long Island.

2.      Taylor A. Swift is a highly successful, multi-talented, widely respected, and influential international recording artist. Ms. Swift's management team is legendary for its sophistication and business moxie. Upon information and belief, in its annual Money Makers list in 2016, *Billboard* magazine recognized Ms. Swift as the highest earning musical act for 2016, stating that Swift earned an estimated $170 million, due in part to her mega-successful 1989 tour and various product endorsements. Swift's net worth was estimated to be $280 million as of August 2017.

3.      Upon information and belief, Glu Games, Inc. ("Glu Games") and Glu Mobile, Inc. ("Glu Mobile") (collectively, "Glu") are leading developers and publishers of mobile games and applications for smartphone and tablet devices. Glu maintains a worldwide licensing program for

---

[1] Motions for Admission Pro Hac Vice are forthcoming.

its software. On February 3, 2016, Taylor Swift and Glu announced their deal to make a "new, 'one-of-a-kind' digital gaming experience" via the social networking application "The Swift Life," which lets users connect to each other via message boards and quizzes, as well as providing exclusive pictures, video, and news on Ms. Swift. The software application is billed as "an experience you won't get anywhere else" because of the exclusive Swift-related content users may access.

4.     Without first obtaining SwiftLife's written consent or a license from SwiftLife for the app, Defendants Taylor Swift and Glu marketed and sold "The Swift Life."[2] Further, without first obtaining SwiftLife's written consent or a license from SwiftLife, Taylor Swift and Glu developed, substantially advertised, and offered "The Swift Life" social networking app for download on the Apple iTunes store.[3] In filing this action, SwiftLife, whose business pales in comparison to that of Ms. Swift and Glu, is standing up for itself—and much like Ms. Swift in her fights against the bullies she has encountered in her own life—seeks to enforce its rights in and to the SwiftLife trademark against Ms. Swift and Glu, both of whom are financial giants.

5.     On information and belief, when combined, Ms. Swift and Glu have a net worth in excess of a billion dollars and certainly could have afforded to license the SwiftLife marks from SwiftLife. Despite this financial heft, the Defendants have refused to do so and thereby have forced SwiftLife to bring this lawsuit so that justice can be done.

---

[2] The software application itself is free to download; however, in-app purchases are enabled for price ranges between $2.99 and up to $29.99 for a "large picks pack."

[3] "The Swift Life" application is available for free download on the Apple iTunes® store at: https://itunes.apple.com/nz/app/taylor-swift-the-swift-life/id1205727849?mt=8 (last visited July 8, 2018).

## PARTIES

6.     Plaintiff SwiftLife, Inc., doing business as SwiftLife® Computer Services is, and has at all times pertinent to this action been, a corporation duly organized and existing under the laws of the State of New York, having its principal place of business at 2099 Wantagh Ave., Wantagh, NY 11793. Patrick Lloyd Yves Bénot is the sole owner and employee of SwiftLife.

7.     On information and belief, Defendant Taylor A. Swift ("Taylor Swift") is a resident of New York and maintains addresses at both 153 Franklin Street, New York, NY 10550 and 155 Franklin Street, New York, NY 10550.

8.     On information and belief, Defendant Taylor Swift Productions, Inc. ("Taylor Swift Productions") is a corporation duly organized and existing under the laws of the State of Tennessee, with its principal place of business at 718 Thompson Lane, Suite 108256, Nashville, Tennessee 37204.

9.     On information and belief, Defendant TAS Rights Management, LLC ("TAS Rights Management") is a limited liability company organized and existing under the laws of the State of Tennessee, with its principal place of business at 718 Thompson Lane, Suite 108256, Nashville, Tennessee 37204.

10.    On information and belief, Defendant Glu Games, Inc. ("Glu Games") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 875 Howard Street, Suite 100, San Francisco, CA 94103, and can be served by serving its registered agent Incorporating Services, Ltd., 3500 S. Dupont Hwy, Dover, DE 19901.

11.    On information and belief, Defendant Glu Mobile, Inc. ("Glu Mobile") is a corporation duly organized and existing under the laws of the State of California, with its principal

place of business at 875 Howard Street, Suite 100, San Francisco, CA 94103, and can be served by serving its registered agent Incorporating Services, Ltd., 3500 S. Dupont Hwy, Dover, DE 19901.

## JURISDICTION AND VENUE

12.     This is a civil action arising under the laws of the United States relating to trademarks (15 U.S.C. § 1114(1), 1125(a)), This Court has federal question jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331 and 1338(a)–(b). This Court has supplemental jurisdiction over Counts III through VIII pursuant to 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over Taylor Swift because she has done and continues to do substantial business in this judicial district and has committed acts of trademark infringement, and other acts complained of herein, in this judicial district.

14.     This Court has personal jurisdiction over Taylor Swift Productions because Taylor Swift Productions has done and continues to do substantial business in this judicial district and has committed acts of trademark infringement, and other acts complained of herein, in this judicial district.

15.     This Court has personal jurisdiction over Glu Games because Glu Games has done and continues to do substantial business in this judicial district and has committed acts of trademark infringement, and other acts complained of herein, in this judicial district.

16.     This Court has personal jurisdiction over Glu Mobile because Glu Mobile has done and continues to do substantial business in this judicial district and has committed acts of trademark infringement, and other acts complained of herein, in this judicial district.

17.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)–(c) and 1400(b). The acts and transactions complained of herein were conceived, carried out, made effective, and had an effect within the State of New York and within this judicial district.

## NATURE OF THE ACTION

18.    In this action, SwiftLife seeks permanent injunctive relief, Defendants' profits, Plaintiff's lost profits and damages, punitive damages, and attorneys' fees, for Defendants' acts of trademark infringement under 15 U.S.C. § 1114 *et seq.*, unfair competition and false designation of origin under 15 U.S.C. § 1125(a), violations of New York General Business Laws §§ 133, 349 and 350, and trademark infringement, unfair competition and unjust enrichment under New York common law.

## FACTUAL ALLEGATIONS

19.    SwiftLife® Computer Services ("SwiftLife") was founded in the early 2000s as a sole proprietorship and incorporated in the year 2007. SwiftLife is a small, individually owned company. SwiftLife's owner, Patrick Bénot, grew up on Long Island where he demonstrated an early interest and talent for information technology.

20.    Patrick demonstrated a love for computers at a young age and began extensively studying computer science, information technology, and electronics. He was the first participant in the Make-A-Wish® program to wish for and receive a computer system. It was on that system that Patrick developed his talent for providing retail computer services.

21.    Prior to graduating high school in 2004, Patrick's talent had materialized into a marketable skillset. He began earning money from friends and family to perform computer repair and other services on-site by using taxis for transportation. In 2001, Patrick began using the mark

SwiftLife in connection with his business. In 2007 he obtained a trademark for "SwiftLife" from the United States Patent and Trademark Office.

22.     Patrick went on to further expand his knowledge of computers and information technology by obtaining his Associates Degree in Information Technology from Briarcliffe College in Bethpage, New York in 2005, just one year after graduating from high school. Despite his brief time at Briarcliffe, he received awards for server networking and both program and non-program specific scholarships. In 2006, Patrick earned a scholarship to attend the Hofstra University Entrepreneurship Program and graduated from the program that same year. In 2007, Patrick obtained his Bachelors Degree in Information Technology from Briarcliffe College.

23.     After graduating, Patrick immediately ventured out on his own by launching SwiftLife to provide a plethora of information technology services to the public. While he began operating his business out of his home, in 2014 things picked up enough for Patrick to open up a commercial storefront:



24.     Since opening his storefront, Patrick has become involved in the local business community and Wantagh Chamber of Commerce.[4]  In February 2017, Patrick was installed as the Wantagh Chamber of Commerce's new president where he aims to enhance the chamber's internet presence and technological communication through creating an online membership database, implementing an online registration and renewal program, enabling local business owners to maintain their own pages on the chamber's website, and creating an Instagram® account.[5]

25.     Through SwiftLife's nearly twenty years of business operations, Patrick has provided a wide range of computer services including hardware repairs, data recovery, virus removal, programming and more. He can even repair cracked iPhone screens and perform micro soldering.

26.     In addition, Patrick has developed an online control panel software which allows users to manage their lives by keeping track of contacts, birthdays, memberships, notes, utility bills, credit card bills, reminders, bookmarks, WiFi accounts, to-do lists, licenses, remote connection information, and other functional applications of technology to everyday life. SwiftLife's company website is http://www.swiftlife.net and the control panel software is separately available at the website http://www.swiftlife.com. The software also enables document storage and has a multi-language functionality that enables the interface to be translated into different languages.

---

[4] *See* Andrew Hackmack, *Wantagh Chamber Welcomes Three New Merchants*, LONG ISLAND HERALD, Sep. 14, 2014, http://liherald.com/stories/Chamber-welcomes-three-new-merchants,58549 (last visited July 18, 2018); *see also* Wantagh Chamber of Commerce, *Spring Fun Hunt*, available at http://events.r20.constantcontact.com/register/event?oeidk=a07edyx2jaj3e966edc&llr=f7qfkuzab (last visited July 18, 2018) (coordinating a spring fun egg hunt at Wantagh Park on April 17, 2017).

[5] *See* Julie Mansmann, *Chamber Installs New Board, Officers*, LONG ISLAND HERALD, Mar. 1, 2017, http://liherald.com/stories/Chamber-installs-new-board-officers,88849 (last visited July 18, 2018).

27. SwiftLife's control panel software has been available online since roughly 2016. While Patrick initially planned to scale the software through marketing to the general public and focusing on rural area newspaper advertisements, the Defendants' infringement of his trademark has hampered this growth. Since the launch of Defendants' infringing product, Patrick has been inundated with user registrations of individuals thinking his product is associated with Defendants. As a result, Patrick has disabled the open registration for the software due to the confusion of people thinking his software is connected with Ms. Swift.

28. Patrick's business and SwiftLife's dedication to the local community have enabled him to build up extensive and valuable business and goodwill in connection with the marketing and sale of his SwiftLife computer services as depicted below:



29. Other reviews on his Yelp® and Facebook® pages demonstrate the goodwill Patrick has developed through his work:

Patrick is honest, nice, and highly qualified in computer repair. I highly recommend!



SwiftLife Computer Services
Software Company

611 Likes
1 talking about this

👍 Like Page

👍 Like          💬 Comment          ↗ Share

---

Pat at SwiftLife has saved our devices more times than I can count! He is friendly, super knowledgeable, quick, reliable, and extremely reasonable on price. He has my son's iPad which froze and my husband's laptop which mysteriously shut down right now to repair. He is our first go to for all computer and phone issues! Highly recommend.

---

I was having trouble with my laptop I was recommended to see Patrick at SWIFTLIFE, He was amazing not only did he fix it quickly but it's running faster then when I bought it. He also fixed my screen saver on my IPhone it was cracked. Definitely recommend him to anyone who needs repairs. Patrick your the Best Thank You 😊

---

We have had Patrick from the time when he worked from his home. He he best man you can. Have solving your problems. And he a truly nice guy. We love him

---

⭐⭐⭐⭐⭐ 6/4/2018

 1 check-in

Brought my laptop in as it was slow and freezing. Patrick was extremely helpful and honest, tuned up my computer on the spot for a reasonable rate. Even cleaned my laptop screen for me!

---

⭐⭐⭐⭐⭐ 9/1/2017

Can't say enough good stuff about my experience with Patrick and Swiftlife!!! My daughter sat on her MacBook Air...screen was a mess and wouldn't log on at all!!! Popped in...within two days...it's up and working like brand new!!!! Please do not hesitate to support this local Wantagh business every chance you get!!!!

★★★★★ 4/20/2016

So glad I found this business!!! My computer issues were resolved and my PC is faster than ever. Happy to know I have a go-to if I encounter any computer issues in the future!

★★★★★ 11/19/2014

🔹 First to Review

I have been using SwiftLife for my business and personal computer needs for over seven years. Whether it's building computers from scratch, updating systems, keeping everything in running order and being available at a moment's notice to diagnose and repair any unforeseen occurrence, their expertise and dedication to their clients is impressive. I recommend them very highly!

**SwiftLife's Marketing and Sale of SwiftLife® Computer Services**

30.     SwiftLife (and Patrick) are the owners of the trademark SwiftLife®, which has been used in connection with the marketing and sale of, *inter alia*, (1) consulting services in the field of design, selection, implementation, and use of computer hardware and software systems for others; (2) design of homepages and websites; (3) repair of computer software; and (4) repair of damages computer programs (collectively, the "SwiftLife® Services").

31.     Since at least 2000, SwiftLife has invested and continues to invest substantial time, money and effort in promoting and advertising its SwiftLife® Services in United States and worldwide commerce, including through its commercial website, *https://www.swiftlife.net*, which is depicted below:



32. SwiftLife, as the result of its extensive SwiftLife® Services in the Tri-state area and beyond, has built and continues to enjoy significant consumer goodwill associated with its SwiftLife® trademarks. In fact, in the last decade SwiftLife has earned substantial income every year from its worldwide marketing and sale of the SwiftLife® Services. As such, SwiftLife's consumers have come to associate SwiftLife as the source of SwiftLife® Services.

33. Prior to the launch of Ms. Swift and Glu's app, SwiftLife was featured prominently amongst the top Google search results for "SwiftLife," however, since the launch of the app on or around December 15, 2017, SwiftLife has slipped down the pages of Google search results[6]— which are now nearly all related to Ms. Swift's and Glu's app—and, on information and belief, will continue to slide further down the list of results based on the app's continued popularity.

34. In addition to noticing the slow-down in leads caused by crowding out effect, Patrick has confirmed that his revenue is down this year compared to last year.

---

[6] On information and belief, as of July 18, 2018, Plaintiff shows up under Google search results for "the swift life" on page 8, for "swift life.com" on page 7, and for "swiftlife" on page 3.

**SwiftLife's Longstanding Ownership and Use of the SwiftLife® Trademark**

35.     SwiftLife is the owner of a federally-registered and incontestable United States trademark for SwiftLife®, at United States Trademark Registration No. 3,368,913 for the mark SwiftLife in International Classification 42 for "consulting services in the field of design, selection, implementation and use of computer hardware and software systems for others, design of homepages and websites, repair of computer software, and repair of damaged computer programs." SwiftLife's first use of the mark in commerce occurred on July 1, 2005, and SwiftLife officially obtained United States Patent and Trademark Office certification of the mark on January 15, 2008. A copy of the SwiftLife trademark is attached hereto as **Exhibit A**.

36.     Because of SwiftLife's longstanding registration and extensive promotion and use of the SwiftLife trademark identifies SwiftLife as the single source of origin for SwiftLife® Services. SwiftLife® has become distinctive, has acquired secondary meaning in the relevant consumer marketplace. As such, SwiftLife desires to put a stop to the unauthorized and non-licensed use of its SwiftLife® trademark by the Defendants.

**Defendants' Unauthorized Marketing and Sale of SwiftLife Software Systems**

37.     SwiftLife has not authorized the Defendants to design, manufacture, distribute, advertise or sell their computer software system or related uses of the mark SwiftLife® through the Apple iTunes® store or otherwise as shown by the partial screenshot of the iTunes® listing for the app below:



38.     Upon information and belief, on or about December 15, 2017, which is about twelve (12) years after SwiftLife first used its SwiftLife® trademark for the marketing and sale of its SwiftLife® Services, Defendants began using the term "SwiftLife" to continuously market and sell Taylor Swift-related content, through the free software application download from Apple iTunes® and the numerous in-application purchases it enables users to make:

## Information

| | |
|---|---|
| Seller | Glu Games Inc |
| Size | 323.7 MB |
| Category | Social Networking |
| Compatibility | Requires iOS 8.0 or later. Compatible with iPhone, iPad and iPod touch. |
| Languages | English |
| Age Rating | Rated 12+ for the following: |
| | Infrequent/Mild Profanity or Crude Humour |
| | Infrequent/Mild Mature/Suggestive Themes |
| | Infrequent/Mild Alcohol, Tobacco, or Drug Use or References |
| Copyright | © 2017 Glu Mobile Inc. All Rights Reserved. Taylor Swift Materials: © 2017 Taylor Swift Productions, Inc. Used by Permission. All Rights Reserved. |
| Price | Free |

| In-App Purchases | | |
|---|---|---|
| 1. | Small Picks Pack | $2.99 |
| 2. | Medium Picks Pack | $7.49 |
| 3. | Large Picks Pack | $29.99 |
| 4. | Sweeter Than Fiction Offer | $7.49 |
| 5. | Call It What You Want | $4.49 |
| 6. | This Is Why We Can't Have N... | $4.49 |
| 7. | ...Ready For It? | $2.99 |
| 8. | Hey Stephen | $2.99 |
| 9. | I Did Something Bad | $4.49 |
| 10. | Gorgeous | $2.99 |

Developer Website ↗   App Support ↗   Licence Agreement ↗   Privacy Policy ↗

39.     Upon information and belief, Taylor Swift has around 85.6 million Twitter® followers. Swift has also used her Twitter® account to promote her "Swift Life" application, as depicted below:





Plaintiff's Original Complaint

40.    Upon information and belief, Taylor Swift has around 108 million Instagram® followers. Swift has also used her Instagram® account to promote her "Swift Life" application, as depicted below where she garnished 1,159,802 likes as of July 18, 2018:



41.    Upon information and belief, Glu has around 454,000 Twitter® followers. Glu has used its Twitter® account to promote its "Swift Life" application, as depicted below:





42.     Upon information and belief, Glu has around 52,900 Instagram® followers. Glu

has also used its Instagram® account to promote its "Swift Life" application, as depicted below:



43. Upon information and belief, beginning at least as early as October 2017, Swift and Glu partnered together to make "The Swift Life" app. From the Apple iTunes® store, at https://itunes.apple.com, the app is described as follows:

**Description**

\* GET THE LATEST FROM TAYLOR: Including exclusive pics, video, news and an experience you won't get anywhere else!
\* CONNECT with Taylor: See what she's liked, and use SwiftSends™ on posts for a better chance of Taylor liking them too!
\* COLLECT tons of cool new Taylor stuff: Get fun animated Taymoji™, pictures, stickers, pets and more
\* JOIN your friends and Swifties: Share, like, comment and help each other
\* DISCOVER Taylor's world: Weekly events and daily top posts mean there's always something new to see

... Ready For It?

© 2017 Glu Mobile Inc. All Rights Reserved.
Taylor Swift Materials: © 2017 Taylor Swift Productions, Inc. Used by Permission. All Rights Reserved.

44. As noted above, Swift and Glu derive revenue from the application through its various users'[7] in-application purchases, with the prices described as follows:

| In-App Purchases | | |
|---|---|---|
| 1. | Small Picks Pack | $2.99 |
| 2. | Medium Picks Pack | $7.49 |
| 3. | Large Picks Pack | $29.99 |
| 4. | Sweeter Than Fiction Offer | $7.49 |
| 5. | Call It What You Want | $4.49 |
| 6. | This Is Why We Can't Have N... | $4.49 |
| 7. | ...Ready For It? | $2.99 |
| 8. | Hey Stephen | $2.99 |
| 9. | I Did Something Bad | $4.49 |
| 10. | Gorgeous | $2.99 |

45. Upon information and belief, Defendants' conduct has been and will continue to be malicious, fraudulent, deliberate, willful, intentional, and in complete disregard of Plaintiff's intellectual property rights.[8]

---

[7] It is currently unknown how many users are on the Defendants' "Swift Life" app; however, based on Defendants' collective popularity and loyal fan base, the number is estimated to be at least in the hundreds of thousands, if not millions.

[8] Ironically, Swift was recently reminded in *Sean Hall d/b/a Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.*, Case 2:17-cv-06882-MWF-AS, C.D. Ca., that "[t]here are very few recording artists, if any, who have a greater interest than Ms. Swift in a robust regime of copyright law. Be careful what you wish for." *See id.* at Dkt. No. 42, entered April 16, 2018.

**Swift's Extensive Trademark Portfolio**

46.     On information and belief, Swift has filed at least sixty-four (64) United States Federal trademark applications, including but not limited to the following marks:

(a)     United States Trademark Registration No. 3,809,272 for the mark TAYLOR SWIFT (and design) in International Classification 35 for "On-line retail store services featuring audio recordings, video recordings, printed publications, printed materials, clothing, collectibles, memorabilia, and a wide variety of products related to a musical artist";

(b)     United States Trademark Registration No. 3,812,827 for the mark TAYLOR SWIFT in International Classification 9 for "Digital media, namely, downloadable audio files and downloadable audio and video recordings featuring musical entertainment; downloadable musical sound recordings; downloadable video recordings featuring musical entertainment; musical video recordings; video recordings featuring musical entertainment";

(c)     United States Trademark Registration No. 3,809,267 for the mark TAYLOR SWIFT in International Classification 35 for "On-line retail store services featuring audio recordings, video recordings, printed publications, printed materials, clothing, collectibles, memorabilia, and a wide variety of products related to a musical artist";

(d)     United States Trademark Registration No. 3,812,829 for the mark TAYLOR SWIFT in International Classification 41 for "Entertainment services consisting of providing a Web site featuring pre-recorded musical performances, news, articles, reviews, photographs, and other information and multi-media materials relating to a

performing and recording musical artist; entertainment services, namely, providing information via a global communications network relating to music and musical entertainment; entertainment services, namely, conducting contests; providing non-downloadable digital music via a global communications network; fan club services";

(e)     United States Trademark Registration No. 3,809,272 for the mark TAYLOR SWIFT (and design) in International Classification 35 for "On-line retail store services featuring audio recordings, video recordings, printed publications, printed materials, clothing, collectibles, memorabilia, and a wide variety of products related to a musical artist;

(f)     United States Trademark Registration No. 3,812,838 for the mark TAYLOR SWIFT (and design) in International Classification 41 for "Entertainment services in the nature of live musical performances; entertainment services consisting of providing a Web site featuring pre-recorded musical performances, news, articles, reviews, photographs, and other information and multi-media materials relating to a performing and recording musical artist; entertainment services, namely, providing information via a global communications network relating to music and musical entertainment; entertainment services, namely, conducting contests; providing non-downloadable digital music via a global communications network; fan club services;

(g)     United States Trademark Registration No. 4,313,779 for the mark TAYLOR SWIFT in International Classification 9 for "Digital media, namely, downloadable multi-media files featuring music and musical entertainment; Downloadable multi-media content containing images, graphics, artwork, text, hypertext, audio and video featuring entertainment, music and musical entertainment; Downloadable electronic

newsletters delivered by e-mail in the fields of entertainment, music, musical entertainment and topics of general interest; Downloadable ring tones for mobile telephones; Downloadable electronic game programs; Fitted plastic films known as skins for covering and protecting electronic apparatus, namely, mobile telephones, portable media players, laptop computers, mobile computers; Bags and cases for holding or carrying portable telephones or electronic devices, and related equipment and accessories; Battery-activated light sticks";

(h)     United States Trademark Registration No. 4,313,780 for the mark TAYLOR SWIFT (and design) in International Classification 9 for "Digital media, namely, downloadable multi-media files featuring music and musical entertainment; Downloadable multi-media content containing images, graphics, artwork, text, hypertext, audio and video featuring entertainment, music and musical entertainment; Downloadable electronic newsletters delivered by e-mail in the fields of entertainment, music, musical entertainment and topics of general interest; Downloadable ring tones for mobile telephones; Downloadable electronic game programs; Fitted plastic films known as skins for covering and protecting electronic apparatus, namely, mobile telephones, portable media players, laptop computers, mobile computers; Bags and cases for holding or carrying portable telephones or electronic devices, and related equipment and accessories; Battery-activated light sticks"; and

(i)     United States Trademark Application No. 87/731,243 for the mark TAYLOR SWIFT in International Classification 9 for, *inter alia* "Sound amplifiers; Cell phone cases; Fitted protective covers for mobile telephones; Stands adapted for mobile telephones, handheld computers, tablet computers, electronic book readers, portable

computers, or portable music players; Grips adapted for mobile telephones, handheld computers, tablet computers, electronic book readers, portable computers, or portable music players; Devices for hands-free use of mobile telephones, handheld computers, tablet computers, electronic book readers, portable computers, or portable music players; Blank USB flash drives; Magnetically encoded gift cards; Sunglasses; Novelty sunglasses; Cases for eyeglasses and sunglasses," as well as International Classification 41 for "Providing online electronic newsletters in the fields of entertainment, music and entertainment; Providing online electronic newsletters relating to a musical artist and entertainer; Museum services; Organizing exhibitions for educational, cultural or entertainment purposes; Educational services, namely, providing displays and exhibits in the fields of entertainment, music and entertainment; Organizing events in the fields of entertainment, music and entertainment for cultural or educational purposes; Educational services, namely, conducting programs in the fields of entertainment, music and musical entertainment; Educational services, namely, after-school programs, classes, educational meetings, lessons, talks, and workshops, in the fields of entertainment, music and musical entertainment."

**Defendants' Infringing Trademark Registrations for The Swift Life App**

47.     On information and belief, Ms. Swift maintains an entity—Defendant TAS Rights Management, LLC—which is responsible for registering and maintaining Ms. Swift's trademark portfolio.

48.     On information and belief, Swift and Glu, through TAS Rights Management, has filed at least four (4) United States Federal trademark applications specifically related to and infringing upon SwiftLife®'s protected mark, including but not limited to the following marks:

(a)     United States Trademark Application No. 86/953,346 for the mark THE SWIFTLIFE in International Classification 35 for "Retail store services featuring a wide variety of consumer goods; On-line retail store services featuring downloadable sound, music, image, video and game files; On-line retail store services, namely, retail store services provided through electronic and digital means, featuring a wide variety of consumer goods; Computerized on-line ordering services featuring a wide variety of consumer goods; Retail store services featuring consumer products in the fields of music and musical entertainment; On-line retail store services featuring consumer products in the fields of music and musical entertainment; Computerized on-line ordering services featuring consumer products in the fields of music and musical entertainment; Retail store services featuring a wide variety of products relating to a musical artist and an entertainer; On-line retail store services featuring a wide variety of products relating to a musical artist and an entertainer; Computerized on-line ordering services featuring a wide variety of products relating to a musical artist and an entertainer; Providing consumer information regarding the selection of products and services to be purchased; Providing consumer information regarding membership club services; Facilitating the exchange of information to assist in the selection of products and services to be purchased;

(b)     United States Trademark Application No. 86/953,351 for the mark THE SWIFTLIFE in International Classification 41 for "Entertainment services in the nature of live musical performances; Entertainment, namely, live music concerts; Entertainment, namely, live stage performances in the nature of interviews with a musical artist and entertainer, for entertainment purposes; Entertainment, namely, live stage performances in the nature of musical and theatrical productions; Entertainment services, namely, public

appearances by a musical artist and entertainer; Entertainment services, namely, providing a website featuring non-downloadable multi-media content, audio recordings, video recordings and audio-visual content, in the fields of entertainment, music and musical entertainment; Entertainment services, namely, providing a website featuring non-downloadable multi-media content, audio recordings, video recordings, and audio-visual content, relating to a musical artist and entertainer; Entertainment services, namely, providing information relating to entertainment, music and musical entertainment; Entertainment services, namely, providing information relating to a musical artist and entertainer; Entertainment services, namely, providing information relating to entertainment, music and musical entertainment via global communications networks; Entertainment services, namely, providing information relating to a musical artist and entertainer via global communications networks; Entertainment services, namely, providing a website featuring news and non-downloadable articles relating to entertainment, music and musical entertainment; Entertainment services, namely, providing a website featuring news and non-downloadable articles relating to a musical artist and entertainer; Providing non-downloadable electronic publications in the nature of articles in the fields entertainment, music and musical entertainment; Providing non-downloadable electronic publications in the nature of articles relating to a musical artist and entertainer. Educational services, namely, live and online programs in the fields of entertainment, music, musical entertainment and topics of general interest, accessible via audio, video, radio, television, satellite, electronic communications, telephone communications and digital transmission networks; Educational services, namely, continuing programs, classes, conferences, coaching, lectures, educational meetings,

camps, retreats, seminars, educational summits, educational symposiums, training programs, workshops, self-guided classes and self-guided online courses of instruction, in the fields of entertainment, music and musical entertainment, and distribution of materials in connection therewith; Providing non-downloadable electronic educational publications, namely, articles, books, booklets, book excerpts, brochures, guides, magazines and newsletters, multi-media content, and audio and video recordings in the fields of entertainment, music and musical entertainment; Providing instruction in the fields of entertainment, music and musical entertainment via global communication networks; Providing non-downloadable music via global communications networks; Providing non-downloadable electronic multi-media content featuring pre-recorded musical performances, stage performances, public appearances, news, photographs, and other information and multi-media materials relating to music and musical entertainment; Providing non-downloadable electronic multi-media content featuring pre-recorded musical performances, stage performances, public appearances, news, photographs, and other information and multi-media materials relating to a musical artist; On-line journals in the nature of blogs in the fields of music and entertainment; On-line journals in the nature of blogs relating to a musical artist and entertainer; On-line journals in the nature of blogs on the topics of general human interest; Entertainment in the nature of computer games, namely, providing temporary use of non-downloadable computer games; Providing temporary use of non-downloadable electronic games. Non-downloadable electronic newsletters in the fields of music and entertainment; Non-downloadable electronic newsletters relating to a musical artist and entertainer; Non-downloadable electronic newsletters on the topics of general human interest; Arranging and conducting contests and

sweepstakes; Arranging and conducting contests and sweepstakes services provided via global communications networks; Fan club services";

(c)     United States Trademark Application No. 87/406,726 for the mark "THE SWIFTLIFE" in, *inter alia*,

(i)     International Classification 42 for: "Providing a web site featuring temporary use of non-downloadable software and technology allowing web site users to create, manage and share content via an online network; providing a website featuring on-line non-downloadable software that enables users to design and create artwork, photos, videos, icons and images";

(ii)    International Classification 45 for: "Social networking services provided online and via mobile and handheld electronic devices";

(iii)   International Classification 35 for: "Retail store services featuring a wide variety of consumer goods; On-line retail store services featuring downloadable sound, music, image, video and game files; On-line retail store services, namely, retail store services provided through electronic and digital means, featuring a wide variety of consumer goods; Computerized on-line ordering services featuring a wide variety of consumer goods; Retail store services featuring consumer products in the fields of music and musical entertainment; On-line retail store services featuring consumer products in the fields of music and musical entertainment; Computerized on-line ordering services featuring consumer products in the fields of music and musical entertainment; Retail store services featuring a wide variety of products relating to a musical artist and an entertainer; On-line retail store services featuring a wide variety of products relating to a musical artist and an entertainer; Computerized on-line ordering services featuring a wide variety of

products relating to a musical artist and an entertainer; Providing consumer information regarding the selection of products and services to be purchased; Providing consumer information regarding membership club services; Facilitating the exchange of information to assist in the selection of products and services to be purchased"; and

(iv) International Classification 41 for: "Entertainment services in the nature of live musical performances; Entertainment, namely, live music concerts; Entertainment, namely, live stage performances in the nature of interviews with a musical artist and entertainer, for entertainment purposes; Entertainment, namely, live stage performances in the nature of musical and theatrical productions; Entertainment services, namely, public appearances by a musical artist and entertainer; Entertainment services, namely, providing a website featuring non-downloadable multi-media content, audio recordings, video recordings and audio-visual content, in the fields of entertainment, music and musical entertainment; Entertainment services, namely, providing a website featuring non-downloadable multi-media content, audio recordings, video recordings, and audio-visual content, relating to a musical artist and entertainer; Entertainment services, namely, providing information relating to entertainment, music and musical entertainment; Entertainment services, namely, providing information relating to a musical artist and entertainer; Entertainment services, namely, providing information relating to entertainment, music and musical entertainment via global communications networks; Entertainment services, namely, providing information relating to a musical artist and entertainer via global communications networks; Entertainment services, namely, providing a website featuring news and non-downloadable articles relating to entertainment, music and musical entertainment; Entertainment services, namely,

providing a website featuring news and non-downloadable articles relating to a musical artist and entertainer; Providing non-downloadable electronic publications in the nature of articles in the fields entertainment, music and musical entertainment; Providing non-downloadable electronic publications in the nature of articles relating to a musical artist and entertainer. Educational services, namely, live and online programs in the fields of entertainment, music, musical entertainment and topics of general interest, accessible via audio, video, radio, television, satellite, electronic communications, telephone communications and digital transmission networks; Educational services, namely, continuing programs, classes, conferences, coaching, lectures, educational meetings, camps, retreats, seminars, educational summits, educational symposiums, training programs, workshops, self-guided classes and self-guided online courses of instruction, in the fields of entertainment, music and musical entertainment, and distribution of materials in connection therewith; Providing non-downloadable electronic educational publications, namely, articles, books, booklets, book excerpts, brochures, guides, magazines and newsletters, multi-media content, and audio and video recordings in the fields of entertainment, music and musical entertainment; Providing instruction in the fields of entertainment, music and musical entertainment via global communication networks; Providing non-downloadable music via global communications networks; Providing non-downloadable electronic multi-media content featuring pre-recorded musical performances, stage performances, public appearances, news, photographs, and other information and multi-media materials relating to music and musical entertainment; Providing non-downloadable electronic multi-media content featuring pre-recorded musical performances, stage performances, public appearances, news, photographs, and

other information and multi-media materials relating to a musical artist; On-line journals in the nature of blogs in the fields of music and entertainment; On-line journals in the nature of blogs relating to a musical artist and entertainer; On-line journals in the nature of blogs on the topics of general human interest; Entertainment in the nature of computer games, namely, providing temporary use of non-downloadable computer games; Providing temporary use of non-downloadable electronic games. Non-downloadable electronic newsletters in the fields of music and entertainment; Non-downloadable electronic newsletters relating to a musical artist and entertainer; Non-downloadable electronic newsletters on the topics of general human interest; Arranging and conducting contests and sweepstakes; Arranging and conducting contests and sweepstakes services provided via global communications networks; Fan club services;" and

(d)     United States Trademark Application No. 87/297,168 for the mark THE SWIFTLIFE in International Classification 9 for "Computer game software; computer graphics software; computer application software for cellular telephones, handheld electronic devices, and wireless devices for voice, data and image transmission and for sharing information on social media; downloadable graphics for cellular telephones, handheld electronic devices, and wireless devices."

49.     Upon information and belief, while Swift and Glu filed the above applications, given Ms. Swift's and Glu's collective extensive trademark portfolio, they knew that SwiftLife had a prior federally registered and incontestable SwiftLife® trademark in International Classification 42 but nevertheless persisted with their infringing filings in International Classification 42 and otherwise.

**Defendants' Intellectual Property Knowledge and Enforcement Activity**

50.     There is no doubt that Swift—who has an extensive trademark portfolio and numerous business and licensing partners, and whose record label is even named "Big Machine"— knows, understands, and substantially profits from her carefully cultivated and meticulously managed trademarks, brand image and other intellectual property. There should also be little doubt that Glu—a sophisticated video game and software development corporation which directly collaborated with Swift on the app—also knows, understands, and substantially profits from its trademarks, brand image and other intellectual property.

51.     As Swift has claimed in previous court filings in which she seeks to protect her trademarks, intellectual property protection is the backbone of her success, including for her copyright-protected musical compositions, trademark-protected brands and her overall image and likeness. Swift previously has filed federal litigation seeking to protect her intellectual property rights. *See, e.g., Taylor Swift v. Malcolm Matthews, et al.*, Case No. 09-cv-00442 (M.D. Tenn. 2009) (the "First Swift Trademark Action"); *see also TAS Rights Management, LLC v. Various John Does et al.*, Case No. 11-cv-00477 (M.D. Tenn. 2011) (the "Second Swift Trademark Action"); and *TAS Rights Management, LLC v. Various John Does, et al.*, Case No. 13-cv-00170 (M.D. Tenn. 2013) (the "Third Swift Trademark Action"). Each of these cases is discussed below:

52.     In the First Swift Trademark Action, a true and correct copy of which is attached hereto as **Exhibit B**, Ms. Swift claims:

> [Taylor Swift] carefully limits [licensing of merchandise bearing her trademarks] . . . and maintains complete control over the manner in which [Taylor Swift's] Trademarks are used and [Taylor Swift's] name and likeness are represented.

*See* **Ex. B** at Paragraph No. 25.

53.     In the Second Swift Trademark Action, a true and correct copy of which is attached

hereto as **Exhibit C**, Ms. Swift claims:

> Ms. Swift is an internationally recognized singer-songwriter, musician and actress.
> . . . Ms. Swift provides and promotes products and services to the public in
> association with her name, Taylor Swift, which also functions as a trademark, used
> in unstylized, literal form – "Taylor Swift," and in the stylized, "logo" form. . . . At
> all times relevant hereto, Ms. Swift and/or her licensees maintained exclusive rights
> in and control of the Taylor Swift Trademarks, which have and continue to be used
> extensively in the United States and throughout the world.

*See* **Ex. C** at Paragraph Nos. 7, 8 and 16.

54.     In the Third Swift Trademark Action, Swift's trademark legal team made the

identical claims as in the Second Swift Trademark Action. *See* **Exhibit D**, which is a true and

correct copy of the Complaint in the Third Swift Trademark Action, also at Paragraph Nos. 7, 8,

and 16.

55.     While Swift's merchandising and licensing team obsessively focuses on the Swift

brand, it ignores the intellectual property rights of others. Swift and Glu have marketed and sold a

"SwiftLife" application, on information and belief since October 2017, containing web site

featuring temporary use of non-downloadable software and technology allowing web site users to

create, manage and share content via an online network; providing a website featuring on-line non-

downloadable software that enables users to design and create artwork, photos, videos, icons and

images." There can be no doubt that Swift and Glu fully understand that marketing and selling

another's goods without securing a license or permission is not acceptable and cannot be allowed.

56.     On information and belief, "The Swift Life" software system and its content that

has been marketed and sold by Swift and Glu is popular and in high demand.

57.     Swift's and Glu's infringement of SwiftLife's federally registered and

incontestable SwiftLife® trademark is clear-cut. SwiftLife is concerned that Swift's and Glu's past

and any future use of the term "SwiftLife" to market and sell Swift-related content and related products has caused, is likely to cause, and will continue to cause confusion with SwiftLife's federally registered and incontestable SwiftLife® trademark.

58. Swift's and Glu's unauthorized use and continued use in interstate commerce of "SwiftLife" for content distributed through a software system and websites is identical in nature to SwiftLife's marketing and sale of the SwiftLife® Services.

59. While SwiftLife does not necessarily market its SwiftLife® branded services to pre-teens and younger teens, a substantial majority of Swift's followers fit within SwiftLife's target consumer demographic of individual computer users who experience issues with their technology.

60. There have been numerous instances where individuals intending to interact with Swift's application have instead contacted Patrick through SwiftLife, confused with the impression that Patrick's company is related to Defendants' social media platform. Even before the app went live and up through present day, Patrick has been flooded with messages from users of the app through his "help@swiftlife.com" email address.

61. On October 13, 2017, Patrick received a message asking: "is this the website related to taylor swift?" A true and correct copy of this message is attached hereto as **Exhibit E** and incorporated by reference herein.

62. Also on October 13, 2017, Patrick received another message from someone else which read: "Taylor, I want to join your site!!" A true and correct copy of this message is attached hereto as **Exhibit F** and incorporated by reference herein.

63. On January 19, 2018, an individual emailed without any prior contact with SwiftLife emailed asking "Hello how can i log in?" Patrick took the time to email back asking if

the individual had an account with SwiftLife and what software they were looking for but did not receive any response. A true and correct copy of this message is attached hereto as **Exhibit G** and incorporated by reference herein.

64. On January 30, 2018, Patrick received a message from another individual stating: "love Taylor." A true and correct copy of this message is attached hereto as **Exhibit H** and incorporated by reference herein.

65. On February 1, 2018, an individual emailed stating: "I'm an avid fan of Taylor swift since I was in sixth grade u until now. Supporting her is the least I can do as a fan. So im hoping for you to accept me as a member of Swift Life." A true and correct copy of this message is attached hereto as **Exhibit I** and incorporated by reference herein.

66. On February 6, 2018, that same individual emailed again as depicted below:



A true and correct copy of this message is attached hereto as **Exhibit J** and incorporated by reference herein.

67.    On March 2, 2018, Patrick received a message complaining about their ability to unlock rare "Taymojis" in the app:

> I'm stuck on getting the Wonderland crown . . . , I've been stuck on this 1 goal for over a Month now & this is just getting ridiculous & beyond frustrating. . . So can you please fix the app so that maybe there's a higher percentage of a chance to get Rare Taymojis? Like maybe 3% instead of 1% out of a hundred??

A true and correct copy of this message is attached hereto as **Exhibit K** and incorporated by reference herein.

68.    On March 23, 2018, Patrick received a message which read: "Hello Taylor swift."

A true and correct copy of this message is attached hereto as **Exhibit L** and incorporated by reference herein.

69.    On May 22, 2018, someone reached out to Patrick with a more substantive complaint about Swift's marketing of tobacco products on the app:

> Can y'all give us other ads to view for options for picks on the Swift Life instead of ads for cigars or cigarettes? Its kinda like promoting those to teens & young adults, when that's an Unhealthy habit. . . I just worry about those who may still be deciding on what norms they think is ok & seeing those on an app geared towards teens and young adults, really doesn't seem appealing or appropriate in my opinion. . . .

A true and correct copy of this message is attached hereto as **Exhibit M** and incorporated by reference herein.

70.    As a result of the confusion, Patrick is now experiencing a decreased online presence, diminished leads, and he is behind in revenue compared to last year (prior to the app's release).[9]

---

[9] Unlike Ms. Swift's experience in *Blue Sphere v. Swift, et al.*, Case No. 8:14-cv-00782, C.D. Ca.—where there was an argument that plaintiff, a clothes manufacturer lucky 13, was actually being helped by Swift's infringement of their trademark (presumably due to increased clothing sales experienced by the plaintiff as a result of confusion)—in this case Patrick's business is being negatively impacted by Swift's infringement through the crowding out effect it has caused.

71.     Defendants have caused, and are likely to continue causing, confusion, mistake, or deception as to the characteristics, qualities, or origin of SwiftLife's SwiftLife® Services. Like Swift, SwiftLife is committed to protecting its SwiftLife® trademarks against the use of identical or confusingly similar marks.

## CLAIMS FOR RELIEF

### COUNT 1

**Infringement of Federally Registered Trademark (Lanham Act § 32)**

72.     SwiftLife hereby repeats and realleges each and every allegation contained above.

73.     This Count is brought pursuant to the Lanham Act § 32, 15 U.S.C. §§ 1114 and 1116(a). Section 1114(1) provides in relevant part that:

(1)     Any person who shall, without the consent of the registrant—

(a)     use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b)     reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

74.     SwiftLife is the owner and registrant of a United States federally registered and incontestable SwiftLife® trademark.

75.     Defendants are not authorized to use any of the SwiftLife® federally registered and incontestable trademarks.

76.     Defendants market and sell goods and/or services to the same or similar consumers.

77.     Without SwiftLife's consent or authorization, Defendants have used and continue to use "SwiftLife" in connection with the advertising, marketing, and offering of goods and/or services in interstate commerce, which imitates SwiftLife's SwiftLife® United States federally registered and incontestable trademark.

78.     The use of SwiftLife's federally registered and incontestable SwiftLife® trademark was done by Defendants with knowledge and intent to create confusion or mistake, or to deceive as to the source of Defendants' goods and/or services.

79.     As a result of Defendants' conduct, there is a strong likelihood of confusion, mistake, or deception.

80.     Defendants' actions have been and continue to be willful, unfair, false and deceptive, in that they tend to mislead, deceive and confuse, and have had—and unless enjoined, will continue to have—the result of misleading, deceiving and confusing the public to believe that Defendants and/or their goods and/or services are affiliated with, sponsored or controlled by SwiftLife.

81.     The foregoing actions of Defendants constitute trademark infringement by inducing the erroneous belief that Defendants and/or their goods and/or services are in some manner affiliated with, originate from, or are sponsored by SwiftLife in violation of the Lanham Act § 32, 15 U.S.C. § 1114.

82.     SwiftLife is informed and believes, and on that ground alleges, that Defendants have made and/or will make unlawful gains and profits from their unlawful actions as alleged herein, and by reason thereof, SwiftLife has been deprived of gains and profits which otherwise would have inured to SwiftLife but for such unlawful actions.

83.     SwiftLife has no adequate remedy at law for the injuries alleged in this Count. The injuries are, in part, intangible in nature and not capable of being fully measured or valued in terms of monetary damages. Further, the injuries are of a continuing nature and will continue to be suffered as long as Defendants continue their wrongful conduct.

84.     Notwithstanding the difficulty of fully ascertaining the value of the damage to SwiftLife caused by Defendants' wrongful conduct, Defendants' conduct has resulted in irreparable, direct and proximate damages to SwiftLife. Therefore, SwiftLife is entitled to injunctive relief under 15 U.S.C. § 1116(a).

## COUNT 2

### False Designation of Origin and Unfair Competition (Lanham Act § 43(a))

85.     SwiftLife hereby repeats and realleges each and every allegation contained above.

86.     This Count is brought pursuant to the Lanham Act § 43(a), 15 U.S.C. §§ 1125(a) and 1116(a). Section 1125(a)(1) provides in relevant part that:

(1)     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which—

(A)     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B)     in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

87.     SwiftLife is the owner and registrant of a United States federally registered and incontestable SwiftLife® trademark.

88. Defendants are not authorized to use any of the SwiftLife® federally registered and incontestable trademarks.

89. Defendants market and sell goods and/or services to the same or similar consumers.

90. Without SwiftLife's consent or authorization, Defendants have used and continue to use "SwiftLife" in connection with the advertising, marketing, and offering of goods and/or services in interstate commerce, which imitates SwiftLife's SwiftLife® United States federally registered and incontestable trademark.

91. Through their adoption and use of the "SwiftLife" term, which is identical to SwiftLife's federally registered and incontestable SwiftLife® trademark, Defendants have intentionally and falsely designated the origin of their "SwiftLife" goods and/or services so as to profit from SwiftLife's name and essentially wipe SwiftLife off the map by confusing the public as to the source, origin, sponsorship or approval of the "SwiftLife" goods and/or services.

92. Defendants' unauthorized use and continued use in interstate commerce of "SwiftLife" goods and/or services has caused and is likely to continue to cause confusion, mistake or deception (a) as to the characteristics, qualities or origin of SwiftLife's SwiftLife® goods, services, and/or commercial activities, (b) as to an affiliation, connection or association between SwiftLife and Defendants, and (c) as to the sponsorship or approval of Defendant's goods, services, and/or commercial activities by SwiftLife. Consumers are likely to confuse SwiftLife's goods, services, and/or commercial activities with those of Defendants under the mistaken belief that Defendants and their "SwiftLife" app are affiliated, connected, or associated with SwiftLife itself.

93.     Defendants' actions described herein were undertaken with the intention of deceiving and misleading the public at large and wrongfully trade on the SwiftLife® mark by eliminating SwiftLife from the vital online marketplace.

94.     Such actions, as used in commercial advertising, have misrepresented and—unless enjoined—will continue to misrepresent the nature, characteristics or qualities of Swift's "SwiftLife" app and Defendants' other goods, services and/or commercial activities for which SwiftLife is without an adequate remedy at law.

95.     The activities of Defendants complained of herein have also caused SwiftLife¸ *inter alia*, monetary loss and damage including, but not limited to, the loss of profits in an amount not yet determined.

96.     Further, the injury is of a continuing nature and will continue to be suffered so long as Defendants continue their wrongful conduct. Notwithstanding the inadequacy of, and the difficulty of, fully ascertaining the value of the damage to SwiftLife caused by Defendants' wrongful conduct, SwiftLife is informed and believes, and on that ground alleges, that said conduct has resulted in irreparable, direct, and proximate damages to SwiftLife.

## COUNT 3

**Deceptive Acts and Practices Unlawful under New York General Business Law § 349**

97.     SwiftLife hereby repeats and realleges each and every allegation contained above.

98.     This Count is brought pursuant to New York General Business Law, Section 349, which states in relevant part that: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or any service in this state are hereby declared unlawful."

99.     SwiftLife is the owner and registrant of a United States federally registered and incontestable SwiftLife® trademark.

100. Defendants are not authorized to use any of the SwiftLife® federally registered and incontestable trademarks.

101. Defendants market and sell goods and/or services to the same or similar consumers.

102. Defendants misappropriated a commercial advantage belonging exclusively to the SwiftLife by the exploitation of SwiftLife's federally registered and incontestable SwiftLife® trademark.

103. Without SwiftLife's consent or authorization, Defendants have used and continue to use "SwiftLife" in connection with the advertising, marketing, and offering of goods and/or services in interstate commerce, which imitates SwiftLife's SwiftLife® United States federally registered and incontestable trademark.

104. The use of SwiftLife's federally registered and incontestable SwiftLife® trademark was done by Defendants with knowledge and intent to create confusion or mistake, or to deceive as to the source of Defendants' goods and/or services.

105. As a result of Defendants' conduct, there is a strong likelihood of confusion, mistake, or deception.

106. Defendants' actions have been and continue to be willful, unfair, false and deceptive, in that they tend to mislead, deceive and confuse, and have had—and unless enjoined, will continue to have—the result of misleading, deceiving and confusing the public to believe that Defendants and/or their goods and/or services are affiliated with, sponsored or controlled by SwiftLife.

107. SwiftLife is informed and believes, and on that ground alleges, that Defendants have made and/or will make unlawful gains and profits from their unlawful actions as alleged

herein, and by reason thereof, SwiftLife has been deprived of gains and profits which otherwise would have inured to SwiftLife but for such unlawful actions.

108.    SwiftLife has no adequate remedy at law for the injuries alleged in this Count. The injuries are, in part, intangible in nature and not capable of being fully measured or valued in terms of monetary damages. Further, the injuries are of a continuing nature and will continue to be suffered as long as Defendants continue their wrongful conduct.

109.    Notwithstanding the difficulty of fully ascertaining the value of the damage to SwiftLife caused by Defendants' wrongful conduct, Defendants' conduct has resulted in irreparable, direct and proximate damages to SwiftLife. Therefore, SwiftLife is entitled to injunctive relief.

110.    The foregoing actions of Defendants constitute deceptive acts or practices in the conduct of business, trade or commerce or in the furnishing of a service in this state and is therefore unlawful under Section 349. Plaintiffs are entitled to bring this action for injunctive relief and damages, including discretionary treble damages for a willful or knowing violation.

## COUNT 4

### False Advertising under New York General Business Law § 350

111.    SwiftLife hereby repeats and realleges each and every allegation contained above.

112.    This Count is brought pursuant to New York General Business Law, Section 350, which states in relevant part that: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

113.    SwiftLife is the owner and registrant of a United States federally registered and incontestable SwiftLife® trademark.

114.     Defendants are not authorized to use any of the SwiftLife® federally registered and incontestable trademarks.

115.     Defendants market and sell goods and/or services to the same or similar consumers.

116.     Defendants misappropriated a commercial advantage belonging exclusively to the SwiftLife by the exploitation of SwiftLife's federally registered and incontestable SwiftLife® trademark.

117.     Without SwiftLife's consent or authorization, Defendants have used and continue to use "SwiftLife" in connection with the advertising, marketing, and offering of goods and/or services in interstate commerce, which imitates SwiftLife's SwiftLife® United States federally registered and incontestable trademark.

118.     The use of SwiftLife's federally registered and incontestable SwiftLife® trademark was done by Defendants with knowledge and intent to create confusion or mistake, or to deceive as to the source of Defendants' goods and/or services.

119.     As a result of Defendants' conduct, there is a strong likelihood of confusion, mistake, or deception.

120.     Defendants' actions have been and continue to be willful, unfair, false and deceptive, in that they tend to mislead, deceive and confuse, and have had—and unless enjoined, will continue to have—the result of misleading, deceiving and confusing the public to believe that Defendants and/or their goods and/or services are affiliated with, sponsored or controlled by SwiftLife.

121.     The foregoing actions of Defendants constitute false advertising in violation of New York General Business Laws, Section 350.

122.     SwiftLife is informed and believes, and on that ground alleges, that Defendants have made and/or will make unlawful gains and profits from their unlawful actions as alleged herein, and by reason thereof, SwiftLife has been deprived of gains and profits which otherwise would have inured to SwiftLife but for such unlawful actions.

123.     SwiftLife has no adequate remedy at law for the injuries alleged in this Count. The injuries are, in part, intangible in nature and not capable of being fully measured or valued in terms of monetary damages. Further, the injuries are of a continuing nature and will continue to be suffered as long as Defendants continue their wrongful conduct.

124.     Notwithstanding the difficulty of fully ascertaining the value of the damage to SwiftLife caused by Defendants' wrongful conduct, Defendants' conduct has resulted in irreparable, direct and proximate damages to SwiftLife. Plaintiffs are entitled to bring this action for actual damages and attorneys' fees, including discretionary treble damages for a willful or knowing violation.

## COUNT 5

### Use of Name or Address with Intent to Deceive under New York General Business Law § 133

125.     SwiftLife hereby repeats and realleges each and every allegation contained above.

126.     This Count is brought pursuant to New York General Business Law, Section 133, which states in relevant part that:

> No person, firm or corporation shall, with intent to deceive or mislead the public, assume, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes or for the purposes of trade, or for any other purpose, any name, designation or style, or any symbol or simulation thereof, which may deceive or mislead the public as to the identity of such person, firm or corporation; nor shall any person, firm or corporation, with like intent, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes, or for the purposes of trade, or for any other purpose, any address or designation of location in the community which may deceive or mislead the public as to the true address or

location of such person, firm or corporation. A violation of this section shall be a misdemeanor.

Whenever there shall be an actual or threatened violation of this section, an application may be made to a court or justice having jurisdiction to issue an injunction, upon notice to the defendant of not less than five days, to enjoin and restrain such actual or threatened violation; and if it shall appear to the satisfaction of the court or justice that the defendant is in fact assuming, adopting or using such name, or is about to assume, adopt or use such name, and that the assumption, adoption or use of such name may deceive or mislead the public, an injunction may be issued by said court or justice, enjoining and restraining such actual or threatened violation without requiring proof that any person has in fact been deceived or misled thereby.

127.     SwiftLife is the owner and registrant of a United States federally registered and incontestable SwiftLife® trademark.

128.     Defendants are not authorized to use any of the SwiftLife® federally registered and incontestable trademarks.

129.     Defendants market and sell goods and/or services to the same or similar consumers.

130.     Defendants misappropriated a commercial advantage belonging exclusively to the SwiftLife by the exploitation of SwiftLife's federally registered and incontestable SwiftLife® trademark.

131.     Without SwiftLife's consent or authorization, Defendants have used and continue to use "SwiftLife" in connection with the advertising, marketing, and offering of goods and/or services in interstate commerce, which imitates SwiftLife's SwiftLife® United States federally registered and incontestable trademark.

132.     The use of SwiftLife's federally registered and incontestable SwiftLife® trademark was done by Defendants with knowledge and intent to create confusion or mistake, or to deceive as to the source of Defendants' goods and/or services.

133. As a result of Defendants' conduct, there is a strong likelihood of confusion, mistake, or deception.

134. Defendants' actions have been and continue to be willful, unfair, false and deceptive, in that they tend to mislead, deceive and confuse, and have had—and unless enjoined, will continue to have—the result of misleading, deceiving and confusing the public to believe that Defendants and/or their goods and/or services are affiliated with, sponsored or controlled by SwiftLife.

135. The foregoing actions of Defendants constitute use of name or likeness with intent to deceive in violation of New York General Business Laws, Section 133.

136. SwiftLife is informed and believes, and on that ground alleges, that Defendants have made and/or will make unlawful gains and profits from their unlawful actions as alleged herein, and by reason thereof, SwiftLife has been deprived of gains and profits which otherwise would have inured to SwiftLife but for such unlawful actions.

137. SwiftLife has no adequate remedy at law for the injuries alleged in this Count. The injuries are, in part, intangible in nature and not capable of being fully measured or valued in terms of monetary damages. Further, the injuries are of a continuing nature and will continue to be suffered as long as Defendants continue their wrongful conduct. Plaintiffs are entitled to injunctive relief for Defendants' violation of Section 133.

## COUNT 6

### Trademark Infringement under New York Common Law

138. SwiftLife hereby repeats and realleges each and every allegation contained above.

139.     SwiftLife is the owner and registrant of a United States federally registered and incontestable SwiftLife® trademark. As such, SwiftLife owns all right, title and interest in and to the SwiftLife® trademark.

140.     Defendants are not authorized to use any of the SwiftLife® federally registered and incontestable trademarks.

141.     Defendants market and sell goods and/or services to the same or similar consumers.

142.     Defendants misappropriated a commercial advantage belonging exclusively to the SwiftLife by the exploitation of SwiftLife's federally registered and incontestable SwiftLife® trademark.

143.     Without SwiftLife's consent or authorization, Defendants have used and continue to use "SwiftLife" in connection with the advertising, marketing, and offering of goods and/or services in interstate commerce, which imitates SwiftLife's SwiftLife® United States federally registered and incontestable trademark.

144.     The use of SwiftLife's federally registered and incontestable SwiftLife® trademark was done by Defendants with knowledge and intent to create confusion or mistake, or to deceive as to the source of Defendants' goods and/or services.

145.     As a result of Defendants' conduct, there is a strong likelihood of confusion, mistake, or deception.

146.     Defendants' actions have been and continue to be willful, unfair, false and deceptive, in that they tend to mislead, deceive and confuse, and have had—and unless enjoined, will continue to have—the result of misleading, deceiving and confusing the public to believe that Defendants and/or their goods and/or services are affiliated with, sponsored or controlled by SwiftLife. SwiftLife is therefore entitled to exemplary and punitive damages pursuant to the

common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendants.

147.     By the acts described above, Defendants have engaged in trademark infringement in violation of the common law of the State of New York.

148.     SwiftLife is informed and believes, and on that ground alleges, that Defendants have made and/or will make unlawful gains and profits from their unlawful actions as alleged herein, and by reason thereof, SwiftLife has been deprived of gains and profits which otherwise would have inured to SwiftLife but for such unlawful actions.

149.     SwiftLife has no adequate remedy at law for the injuries alleged in this Count. The injuries are, in part, intangible in nature and not capable of being fully measured or valued in terms of monetary damages. Further, the injuries are of a continuing nature and will continue to be suffered as long as Defendants continue their wrongful conduct.

## COUNT 7

### Unfair Competition under New York Common Law

150.     SwiftLife hereby repeats and realleges each and every allegation contained above.

151.     SwiftLife is the owner and registrant of a United States federally registered and incontestable SwiftLife® trademark. As such, SwiftLife owns all right, title and interest in and to the SwiftLife® trademark.

152.     Defendants are not authorized to use any of the SwiftLife® federally registered and incontestable trademarks.

153.     Defendants market and sell goods and/or services to the same or similar consumers.

154.     Defendants misappropriated a commercial advantage belonging exclusively to the SwiftLife by the exploitation of SwiftLife's federally registered and incontestable SwiftLife® trademark.

155.     Without SwiftLife's consent or authorization, Defendants have used and continue to use "SwiftLife" in connection with the advertising, marketing, and offering of goods and/or services in interstate commerce, which imitates SwiftLife's SwiftLife® United States federally registered and incontestable trademark.

156.     The use of SwiftLife's federally registered and incontestable SwiftLife® trademark was done by Defendants with knowledge and intent to create confusion or mistake, or to deceive as to the source of Defendants' goods and/or services.

157.     As a result of Defendants' conduct, there is a strong likelihood of confusion, mistake, or deception.

158.     Defendants' actions have been and continue to be willful, unfair, false and deceptive, in that they tend to mislead, deceive and confuse, and have had—and unless enjoined, will continue to have—the result of misleading, deceiving and confusing the public to believe that Defendants and/or their goods and/or services are affiliated with, sponsored or controlled by SwiftLife. SwiftLife is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendants.

159.     By the acts described above, Defendants have engaged in unfair competition in violation of the common law of the State of New York.

160.     SwiftLife is informed and believes, and on that ground alleges, that Defendants have made and/or will make unlawful gains and profits from their unlawful actions as alleged

herein, and by reason thereof, SwiftLife has been deprived of gains and profits which otherwise would have inured to SwiftLife but for such unlawful actions.

161.    SwiftLife has no adequate remedy at law for the injuries alleged in this Count. The injuries are, in part, intangible in nature and not capable of being fully measured or valued in terms of monetary damages. Further, the injuries are of a continuing nature and will continue to be suffered as long as Defendants continue their wrongful conduct.

**COUNT 8**

**Unjust Enrichment under New York Common Law**

162.    SwiftLife hereby repeats and realleges each and every allegation contained above.

163.    SwiftLife is the owner and registrant of a United States federally registered and incontestable SwiftLife® trademark. As such, SwiftLife owns all right, title and interest in and to the SwiftLife® trademark.

164.    Defendants are not authorized to use any of the SwiftLife® federally registered and incontestable trademarks.

165.    Defendants market and sell goods and/or services to the same or similar consumers.

166.    Defendants misappropriated a commercial advantage belonging exclusively to the SwiftLife by the exploitation of SwiftLife's federally registered and incontestable SwiftLife® trademark.

167.    Without SwiftLife's consent or authorization, Defendants have used and continue to use "SwiftLife" in connection with the advertising, marketing, and offering of goods and/or services in interstate commerce, which imitates SwiftLife's SwiftLife® United States federally registered and incontestable trademark.

168.    The use of SwiftLife's federally registered and incontestable SwiftLife® trademark was done by Defendants with knowledge and intent to create confusion or mistake, or to deceive as to the source of Defendants' goods and/or services.

169.    As a result of Defendants' conduct, there is a strong likelihood of confusion, mistake, or deception.

170.    Defendants' actions have been and continue to be willful, unfair, false and deceptive, in that they tend to mislead, deceive and confuse, and have had—and unless enjoined, will continue to have—the result of misleading, deceiving and confusing the public to believe that Defendants and/or their goods and/or services are affiliated with, sponsored or controlled by SwiftLife. SwiftLife is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendants.

171.    By the acts described above, Defendants have been unjustly enriched in violation of the common law of the State of New York.

172.    SwiftLife is informed and believes, and on that ground alleges, that Defendants have made and/or will make unlawful gains and profits from their unlawful actions as alleged herein, and by reason thereof, SwiftLife has been deprived of gains and profits which otherwise would have inured to SwiftLife but for such unlawful actions.

173.    SwiftLife has no adequate remedy at law for the injuries alleged in this Count. The injuries are, in part, intangible in nature and not capable of being fully measured or valued in terms of monetary damages. Further, the injuries are of a continuing nature and will continue to be suffered as long as Defendants continue their wrongful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

A.      declaring that Defendants' conduct infringes SwiftLife's United States federally registered and incontestable SwiftLife® trademark, falsely designates the origin of Defendants' "The Swift Life" software application and other products and services, falsely describes such goods and/or services, and unfairly competes with SwiftLife, all in violation of Lanham Act §§ 32, 43(a), 15 U.S.C. § 1114, and 15 U.S.C. § 1125;

B.      declaring that Defendants' conduct constitutes acts and practices in violation of New York General Business Laws, §§ 133, 349 and 350;

C.      declaring that Defendants' conduct constitutes trademark infringement, unfair competition and unfair enrichment under the common law of the State of New York;

D.      ordering that Defendants and their agents, officers, directors, servants, employees, attorneys, their successors and assignees, and all others in active concert or participation with Defendants be preliminarily and permanently enjoined from directly or indirectly:

i.      using SwiftLife's United States federally registered and incontestable SwiftLife® trademark, or any other trademarks which are confusingly similar to or colorable imitations of SwiftLife's United States federally registered and incontestable SwiftLife® trademark, including, without limitation, the term "SwiftLife" alone or as part of or together with any other designs, word or words, trademark, service mark, trade name, trade dress or other business or commercial designation or any logo, symbol or design;

ii.      committing any act which, in and of itself, or from the manner or under the circumstances in which it is done amounts to false designation of origin, false description or false representation of Defendants' "The Swift Life" goods and/or services; and

iii. otherwise unfairly competing with SwiftLife or misappropriating SwiftLife's intellectual property, including but not limited to SwiftLife's United States federally registered and incontestable SwiftLife® trademark;

E. ordering Defendants to file with the Court and serve on SwiftLife, within thirty days after the service on Defendants of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

F. awarding Plaintiff the amount of either damages sustained by SwiftLife or the profits made by Defendants as a result of Defendants' wrongful conduct, whichever amount is greater, and damages in an amount necessary for SwiftLife to conduct corrective advertising to eliminate the confusion caused by Defendants' wrongful acts;

G. awarding Plaintiff an amount of treble damages under 15 U.S.C. § 1117, plus prejudgment interest;

H. awarding Plaintiff any punitive, exemplary or treble damages authorized under New York General Business Law or New York Common Law based on Defendants' wrongful conduct sufficient to deter Defendants from committing such willful acts of infringement in the future;

I. awarding Plaintiff its full costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees, experts' fees, and other costs and disbursements;

J. awarding interest on all amounts found to be due to SwiftLife from Defendants, at the prevailing rate, from the date said amounts or any part thereof became or become due;

K. ordering Defendants to notify any parent, subsidiaries, affiliated companies, commercial associates, advertising associations, advertising agencies, suppliers and customers of said judgment; and

L.      awarding Plaintiff such other and further relief as may be just and proper under the circumstances.

Plaintiff further prays that the Court retain jurisdiction of this action for the purpose of enabling SwiftLife to apply to the Court, at any time, for such further orders as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: July 20, 2018.

Respectfully submitted,

**MURPHY RODRIGUEZ, PLLC**
3300 Oak Lawn Ave.
Suite 408
Dallas, Texas 75219
P: (972) 752-0557
F: (972) 692-7719
Ramon@gotexlaw.com
Murphy@gotexlaw.com

Ramon de Jesus Rodriguez *(Pro Hac Vice Forthcoming)*
Texas State Bar No. 24088319
Christopher S. Murphy *(Pro Hac Vice Forthcoming)*
Texas State Bar No. 24079031

and:

**MOHEN COOPER LLC**
135 Crossways Park Drive, Suite 402
Woodbury, NY 11797
P: (516) 280-8600
F: (212) 485-1537
acooper@mohencooper.com
kkast@mohencooper.com

By: */s/ Andrew Cooper*
Andrew Cooper, Esq. (AC6512)
Kenneth S. Kast, Esq. (KK9354)

**ATTORNEYS FOR PLAINTIFF**